1  Gabriela Gonzalez-Araiza (SBN: 320693)
   gabriela@lkcfirm.com
2  **LEHOTSKY KELLER COHN LLP**
   200 Massachusetts Avenue NW
3  Washington, DC 20001
   (512) 693-8350
4

5  Attorney for *Amicus Curiae* the National Retail Federation

6           **IN THE UNITED STATES DISTRICT COURT**
           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
7

8  MIGUEL LICEA, individually and on          Case No. 5:22-cv-01702-MWF-JPR
   behalf of all others similarly situated,
9                                             **BRIEF OF *AMICUS CURIAE* THE
              Plaintiff,                       NATIONAL RETAIL
10                                             FEDERATION IN SUPPORT OF
        v.                                     DEFENDANT'S MOTION TO
11                                             DISMISS SECOND AMENDED
   AMERICAN EAGLE OUTFITTERS                   COMPLAINT**
12 INC., a Delaware corporation; and
   DOES 1 through 25, inclusive,               Hearing Date: June 5, 2023
13
              Defendants.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES...............................................................................ii

CORPORATE DISCLOSURE STATEMENT...................................................1

INTEREST OF AMICUS CURIAE....................................................................1

ARGUMENT .......................................................................................................4

I.   Website chat features do not violate § 631(a)'s prohibition on
     wiretapping or eavesdropping. ..................................................................4

     A.   Plaintiff has failed to show web chats violate § 631 because
          participants to a conversation do not violate that statute by
          reading communications sent to them...............................................6

     B.   Plaintiff does not allege facts establishing that web chat
          features "tap" a "telegraph or telephone wire."..............................7

     C.   Plaintiff fails to allege facts that chat communications were
          "intercepted" "while the same is in transit or passing over
          any wire." ........................................................................................9

II.  Plaintiff fails to state a claim that internet web chats violate
     § 632.7's prohibition of intercepting or recording telephones
     conversations. ..........................................................................................13

     CONCLUSION ............................................................................................18

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*,
   No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2,
   2021)..................................................................................................9, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................4, 5, 10, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................4, 6, 10, 11

*Byars v. Goodyear Tire and Rubber Co., et al.*,
   No. 5:22-cv-01358-SSS-KK, 2023 WL 1788553 (C.D. Cal. Feb. 3,
   2023)................................................................................15, 16, 17

*Byars v. Hot Topic, Inc. et al.*,
   No. 5:22-cv-01652-JGB-SP, 2023 WL 2026994 (C.D. Cal. Feb.
   14, 2023)...........................................2, 3, 5, 6, 11, 12, 14, 15, 16, 17

*Byars v. Sterling Jewelers, Inc. et al.*,
   No. 5:22-cv-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5,
   2023) ...........................................................................................2

*Calcano v. Swarovski N. Am. Ltd.*,
   36 F.4th 68 (2d Cir. 2022) ...................................................................5

*Cody v. Boscovs*,
   No. 8:22-cv-01434-SSS-KK, 2023 WL 2338302 (C.D. Cal. Mar. 2,
   2023) ...........................................................................................2

*Domondon v. First Franklin*,
   No. 2:16-cv-01277-JAK-MRW, 2016 WL 7479399 (C.D. Cal.
   June 23, 2016) ..................................................................................5

*Flanagan v. Flanagan*,
   41 P.3d 575 (Cal. 2002)..................................................................14

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

*In re Google Inc. Gmail Litig.*,
    No. 5:13-md-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26,
    2013)................................................................................................................17

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021)........................................................13

*Hataishi v. First Am. Home Buyers Prot. Corp.*,
    168 Cal. Rptr. 3d 262 (Cal. Ct. App. 2014).............................................14

*Jang v. 1st United Bank*,
    No. 2:11-cv-02427-JAM-GGH, 2012 WL 2959985 (E.D. Cal. July
    19, 2012) ......................................................................................................5

*Kahn v. Outrigger Enters., Inc.*,
    No. 2:13-cv-03802-SVW-JC, 2013 WL 12136379 (C.D. Cal. Oct.
    29, 2013)......................................................................................................17

*Licea v. Caraway Home Inc. et al.*,
    No. 5:22-cv-01791-JGB-SHK, 2023 WL 1999496 (C.D. Cal. Feb.
    9, 2023) .....................................................................................................2, 3

*Licea v. Cinmar, LLC*,
    No. 2:22-cv-06454-MWF-JEM (C.D. Cal. Mar. 7, 2023) .....2, 7, 8, 9, 12, 14, 15

*Licea v. Old Navy, LLC*,
    No. 5:22-cv-01413-SSS-SP,  2023 WL 3012527 (C.D. Cal. Apr.
    19, 2023) .......................................................................................................2

*Ma v. Ashcroft*,
    361 F.3d 553 (9th Cir. 2004) ......................................................................18

*Martinez v. Newsom*,
    46 F.4th 965 (9th Cir. 2022) .........................................................................4

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021) ...........................................8, 9, 15

*Montantes v. Inventure Foods*,
    No. 2:14-cv-01128-MWF-RZ, 2014 WL 3305578 (C.D. Cal. July
    2, 2014)...................................................................................................16, 17

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014)...........................................................9

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

*People v. Nakai*,
    107 Cal. Rptr. 3d 402 (Cal. Ct. App. 2010)........................................................18

*Powell v. Union Pac. R.R. Co.*,
    864 F. Supp. 2d 949 (E.D. Cal. 2012) ..................................................................6

*Quigley v. Yelp, Inc.*,
    No. 3:17-cv-03771-RS, 2018 WL 7204066 (N.D. Cal. Jan. 22,
    2018).....................................................................................................................11

*Rodriguez v. Google LLC*,
    No. 3:20-cv-04688-RS, 2022 WL 214552, (N.D. Cal. Jan. 25,
    2022).....................................................................................................................11

*Rogers v. Ulrich*,
    125 Cal. Rptr. 306 (Cal. Ct. App. 1975)................................................................6

*Rosenow v. Facebook, Inc.*,
    No. 3:19-cv-01297-WQH-JLB, 2020 WL 1984062 (S.D. Cal. Apr.
    27, 2020).........................................................................................................10, 13

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021) ..................................................................6

*Shayler v. 1310 PCH, LLC*,
    51 F.4th 1015 (9th Cir. 2022) ...............................................................................5

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ..............................................................................5

*In re Vizio, Inc., Consumer Priv. Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..............................................................11

*Warden v. Kahn*,
    160 Cal. Rptr. 471 (Cal. Ct. App. 1979)...............................................................7

*WildEarth Guardians v. Haaland*,
    561 F. Supp. 3d 890 (C.D. Cal. 2021) ..................................................................4

*Williams v. What If Holdings, LLC*,
    No. 3:22-cv-03780-WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22,
    2022).....................................................................................................................13

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

*Yale v. Clicktale, Inc.*,
   No. 3:20-cv-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15,
   2021)............................................................................................................13

**Statutes**

Cal. Penal Code § 631(a)...............................................2, 3, 6, 7, 8, 9, 12, 13, 15, 16

Cal. Penal Code § 632.7(a)...........................................3, 14, 15, 16, 17, 18

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .............................................................................................4

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

## CORPORATE DISCLOSURE STATEMENT

*Amicus Curiae*, the National Retail Federation ("NRF"), is not a publicly held corporation, has no parent corporation, and no publicly held corporation owns 10% or more of its stock. No counsel to any party in this case authored this brief in whole or in part; no party or party's counsel contributed any money that was intended to fund preparing or submitting the brief; and no person—other than the amicus curiae, its members, and its counsel—contributed money that was intended to fund preparing or submitting the brief.

## INTEREST OF AMICUS CURIAE

Established in 1911, the NRF is the world's largest retail trade association. Retail is the largest private-sector employer in the United States. It supports one in four U.S. jobs—approximately 52 million American workers—and contributes $3.9 trillion to annual GDP. The NRF's membership includes retailers of all sizes, formats, and channels of distribution, including many that sell goods via a website and communicate with customers through a website. NRF's members also are often targeted as defendants in class actions. NRF is thus familiar with class action litigation, both from the perspective of individual defendants in class actions and from a more global perspective. And many of NRF's members sell goods via the internet to consumers in California.

NRF files this brief to continue to provide the Court with its perspective regarding the claims in this case, which, as pointed out in NRF's previous brief, is part of a wave of copy-paste lawsuits filed by Plaintiff's attorneys against over one hundred retailers, including NRF members. *See* NRF's *Ex Parte* Application Ex. B; *see also* Def.'s Req. for Judicial Notice, Dkt. #19. Many retailers operate a website with a "chat" feature supplied by a third-party software service provider. Much like an email account, the chat feature allows retail customers to send written communications to a retailer to ask questions or seek advice regarding products or

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

services. Plaintiff alleges that by reading written messages Plaintiff sent to a retailer via the chat feature, and storing those messages rather than immediately deleting them, the retailer has committed illegal wiretapping and eavesdropping in violation of the California Invasion of Privacy Act ("CIPA"). Plaintiff's Second Amended Complaint fails to overcome the deficiencies noted in this Court's order granting Defendant's Motion to Dismiss the First Amended Complaint. *See* Order Granting Def.'s Mot. to Dismiss First Am. Compl., Dkt. #33. Instead, Plaintiff continues his tactic of making broad and vague allegations, which continue to be meritless. Rather than allow these claims to become an abusive tool wielded against retailers across the country, they should be dismissed with prejudice.

This Court has already dismissed a near-identical lawsuit against a different company. Order Granting Def.'s Mot. to Dismiss, *Licea v. Cinmar, LLC*, No. 2:22-cv-06454-MWF-JEM (C.D. Cal. Mar. 7, 2023) (Fitzgerald, J.), Dkt. #58 ("*Cinmar*"). However, in that case, rather than make a weak attempt at amending the complaint, plaintiffs voluntarily dismissed the action soon after this Court's order. *See* Notice of Voluntary Dismissal, *Cinmar*, Dkt. #59.

Three other judges in the Central District of California have similarly dismissed copycat lawsuits against other companies in well-reasoned opinions. *See Byars v. Hot Topic, Inc. et al.*, No. 5:22-cv-01652-JGB-SP, 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) (Bernal, J.); *Licea v. Caraway Home Inc. et al.*, No. 5:22-cv-01791-JGB-SHK, 2023 WL 1999496 (C.D. Cal. Feb. 9, 2023) (Bernal, J.); *Byars v. Sterling Jewelers, Inc. et al.*, No. 5:22-cv-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) (Blumenfeld, J.); *Cody v. Boscovs*, No. 8:22-cv-01434-SSS-KK, 2023 WL 2338302 (C.D. Cal. Mar. 2, 2023) (Sykes, J.) (dismissing with prejudice claims alleging Defendant's direct liability under § 631(a), but granting Plaintiff leave to amend the remining claims); *Licea v. Old Navy, LLC*, No. 5:22-cv-01413-SSS-SP,  2023 WL 3012527 (C.D. Cal. Apr. 19, 2023) (Sykes, J.) (dismissing with prejudice claims alleging Defendant's direct liability under § 631(a), granting

Plaintiff leave to amend remining § 631 claims, and denying Defendant's motion to dismiss Plaintiff's § 632.7 claims). In so doing, Judge Bernal perceptively described the tactics in this and related lawsuits:

> [T]he Court acknowledges the central dynamic in this litigation, underscoring all of the deficiencies in the FAC: Plaintiff, and [his] counsel, Scott Ferrell, are serial litigants bringing numerous "cookie cutter" lawsuits under CIPA against various businesses that operate websites. . . . [W]hen the goal is to file as many lawsuits as possible in the least amount of time, it is far easier and cheaper to copy and paste a complaint over and over again, and to write the original template in such a way that hardly anything needs to be swapped out. Sometimes a plaintiff can get away with this, particularly if a defendant is willing to offer a quick cash settlement. But other defendants may not roll over so easily, and raise some fundamental questions, not least: Why is the entire complaint written at such a high level of generality that it could apply word-for-word to the dozens of other businesses this law firm is suing? And surely, whatever one's views on the propriety of copying and pasting from boilerplate pleadings, there is a point at which all reasonable people should agree the practice has gone too far. . . . The FAC is replete with evidence of cut-and- paste work, perhaps the most obvious of which is that it never mentions the name of the company Plaintiff is suing after the caption page, because doing so might take more than a few seconds to alter when filing a new lawsuit.

*Id.* at *4-5. After this ruling, the plaintiff in that case voluntarily dismissed her lawsuit in the *Hot Topic* case, and Plaintiff's attorney dismissed in two other copycat lawsuits also before Judge Bernal but persists in his litigation before other judges. *See* Notice of Voluntary Dismissal, *Licea v. Luxottica*, No. 5:22-cv-01826-JGB-KK (C.D. Cal. dismissed Feb. 14, 2023), Dkt. #26; Notice of Voluntary Dismissal, *Licea v. Caraway Home Inc.*, No. 5:22-cv-01791-JGB-SHK (C.D. Cal. dismissed Feb. 14, 2023), Dkt. #21.

NRF members respect and protect the privacy of all their customers and website visitors. Vexatious lawsuits like this one do nothing to advance those privacy interests. Instead, they attempt to warp CIPA beyond recognition and do so in a way that threatens numerous businesses with civil and criminal liability simply

for using commonplace technology to communicate and serve customers in California. This Court has "broad discretion" to accept briefs of *amicus curiae* and, in general, "err[s] on the side of permitting such briefs." *WildEarth Guardians v. Haaland*, 561 F. Supp. 3d 890, 905-06 (C.D. Cal. 2021) (internal marks omitted). Because this brief provides arguments that will be "useful" to the Court from *amicus*'s "unique . . . perspective," *id.* (internal marks omitted), NRF files this *amicus curiae* brief in support of Defendant's motion to dismiss Plaintiff's second amended complaint.

## **ARGUMENT**

## I.    **Website chat features do not violate § 631(a)'s prohibition on wiretapping or eavesdropping.**

Plaintiff's complaint must be dismissed because Plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). And the court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," such as Defendant's website and Privacy Policy. *Martinez v. Newsom*, 46 F.4th 965, 971 (9th Cir. 2022) (internal marks omitted).

Plaintiff's barebone allegations do not contain sufficient factual matter to survive a motion to dismiss. The requirement that a complaint contain plausible factual allegations is meant to prevent courts from being embroiled in claims like Plaintiff's, which allege only non-specific hypothetical harms that can be duplicated in cookie-cutter lawsuits filed in courts across the State. *See Shayler v. 1310 PCH,*

*LLC*, 51 F.4th 1015, 1018 (9th Cir. 2022) ("A hallmark of abusive . . . litigation is the use of form complaints containing a multitude of boilerplate allegations of varying merit.") (collecting cases); *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 77 (2d Cir. 2022) ("Th[e] backdrop of Plaintiffs' Mad-Libs-style complaints further confirms the implausibility of their claims of injury," where plaintiffs had filed 81 "essentially carbon-copy complaints."); *Domondon v. First Franklin*, No. 2:16-cv-01277-JAK-MRW, 2016 WL 7479399, at *5 (C.D. Cal. June 23, 2016) (dismissing complaint that was a "'cut and paste' of similar complaints filed in other actions"); *Jang v. 1st United Bank*, No. 2:11-cv-02427-JAM-GGH, 2012 WL 2959985, at *2 n.2 (E.D. Cal. July 19, 2012) ("Boilerplate or 'cut and paste' pleadings are strongly discouraged."). NRF has a strong interest in ensuring its members are not subject to such lawsuits that fail to meet minimum pleading standards.

As Judge Bernal notes, "[t]he Ninth Circuit has clarified that (1) a complaint must 'contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,' and (2) 'the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Hot Topic*, 2023 WL 2026994, at *3 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). Here, "[i]n a remarkable illustration of conclusory pleading," Plaintiff makes allegations that Defendant directly violated CIPA § 631 and that Defendant aided and abetted a third party's violation of § 631. *Id.* at *7. But, as shown below, Plaintiff fails to show almost any element of a § 631 violation is met by everyday internet chats. As Judge Bernal helpfully summarized:

At the end of the day, <u>Twombly</u>-<u>Iqbal</u> pleading standards might be distilled to a single proposition: if a litigant pleads at such a high level of generality that it is possible to copy and paste a complaint word-for-word against a new defendant (at least after the unnumbered "introduction" section, where Plaintiff's Counsel has written the URL of the defendant of the day and referred to it as "the Website" so that he need not make a single other alteration to the rest of the complaint), then almost by definition he is pleading without the factual specificity necessary to state a claim for relief.

*Id.* at *5.

### A. Plaintiff has failed to show web chats violate § 631 because participants to a conversation do not violate that statute by reading communications sent to them.

Plaintiff makes a broad claim that Defendant violates each prong of § 631 but provides *no* factual allegations in support of a wiretapping claim. Second Am. Compl., Dkt. #34, ¶ 33. But Plaintiff's attempt to make a wiretapping claim fails anyway. Although § 631(a) prohibits secretly wiretapping or eavesdropping on a conversation, it cannot be applied to a participant to the conversation because "[i]t is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation." *Rogers v. Ulrich*, 125 Cal. Rptr. 306, 309 (Cal. Ct. App. 1975); *see also Hot Topic*, 2023 WL 2026994, at *7-10 (dismissing nearly identical § 631(a) claims against Hot Topic finding that the party exemption applied); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 519 (C.D. Cal. 2021) ("[T]o the extent Plaintiff alleges [online retailer] recorded its own communications with Plaintiff, the court finds the § 631 [participant] exemption applies."); *Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012) (collecting cases that "are in accord that section 631 applies only to third parties and not participants").

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

As Defendant explains, the sender of a communication necessarily consents to the intended recipient receiving the communication. Def.'s Mem., Dkt. #35-1, at 9-10. Plaintiff cannot state an "eavesdropping" or "wiretapping" claim under § 631 against Defendant for merely participating in a text-based conversation with Plaintiff. Nor can Defendant be held liable under § 631 for retaining the written conversation to which Defendant was a participant. *See Warden v. Kahn*, 160 Cal. Rptr. 471, 475 (Cal. Ct. App. 1979); *Cinmar*, Dkt. #58, at 11 ("California law is well settled that a party to the communication is not liable for recording their own conversation under section 631(a) . . . ."). Thus, Plaintiff's claim that Defendant is directly liable for violating § 631 must be dismissed.

**B.    Plaintiff does not allege facts establishing that web chat features "tap" a "telegraph or telephone wire."**

Despite this Court's determination that § 631(a) "does not apply to communications with a smart phone or Wi-Fi-enabled laptop," Plaintiff continues to make the same deficient factual allegations about the type of technology allegedly used by Defendant. *See* Order Granting Def.'s Mot. to Dismiss First Am. Compl., Dkt. #33, at 7-10. Section 631(a) prohibits only "taps" of "telegraph or telephone" wires, but Plaintiff's alleged use of the chat feature involves only Plaintiff's alleged use of a web browser on his smart phone and Defendant's website chat communications. Second Am. Compl., Dkt. 34, ¶¶ 23-24.

Text-based communications over the internet between two computers have been held *not* to take place by "telegraph or telephone" via "wire, line, cable, or instrument" for purposes of § 631(a). *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134-35 (E.D. Cal. 2021); *see also* Def.'s Mem., Dkt. #35-1, at 7-8; *Cinmar*, Dkt.

#58, at 8-11 (dismissing plaintiff's § 631(a) claims on the grounds that the first clause of 631(a) "does not apply to communications with a smart phone or Wi-Fi-enabled laptop"). This is true even if Plaintiff used a web browser from a smartphone to use the chat feature on Defendant's website, because while smartphones "contain the word 'phone' in their name, and have the capability of performing telephonic functions, they are, in reality, small computers . . . that perform functions well beyond and unrelated to those of a telephone," and Plaintiff's allegations necessarily involve "a feature of the portion of the [smartphone] that functions as a computer, not the phone." *Id.* at 1135-36; *see Cinmar*, Dkt. #58, at 9.

In *Cinmar* (and in its order on the previous motion to dismiss in this case), this Court soundly rejected Plaintiff's arguments that § 631 applies to its alleged web chat communications both because of the plain text of the statute and (secondarily) because of its history. First, the Court noted that other "[c]ourts have consistently interpreted this clause as applying only to communications over telephones and not through the internet." *Cinmar*, Dkt. #58, at 8 (collecting cases). *Cinmar* noted that not only has this been "the overwhelming weight of authority," but also that courts have already rejected arguments "that a smart phone falls within the definition of telephone." *Id*. at 9. Second, *Cinmar* explained that even though the "[p]lain interpretation [of the statute] and the case law dictat[ed]" the exclusion of Plaintiff's communications, the statute's history also confirms this result. *Id*. at 9-10. The legislature has amended the California Invasion of Privacy Act numerous times since it was enacted, including amending § 631 twice (in 2011 and 2022) and has not defined "telephone" to "appl[y] to all telephones which then includes internet technologies." *Id*. at 10; *see also id*. ("Courts have consistently favored a narrow

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

reading of [§ 631(a)] the first clause which the Legislature could have rejected through clarifying amendment."). Plaintiff's Second Amended Complaint merely rephrases the same allegations that previously failed—that Plaintiff used a smart phone to access the web chat feature—and adds that Defendant communicated via its website. Second Am. Compl., Dkt. 34, ¶¶ 23-24.

For these reasons, the website's chat feature cannot be held to have violated § 631(a)'s wiretapping prohibition, and Defendant cannot be held liable directly or for aiding and abetting.

### C. Plaintiff fails to allege facts that chat communications were "intercepted" "while the same is in transit or passing over any wire."

Even if the second clause of § 631(a), unlike the first clause, applies beyond telephones and telegraphs, Plaintiff's Second Amended Complaint fails to state a claim under the second clause because Plaintiff still fails to sufficiently state facts establishing the alleged eavesdropping occurred while the chat communication was "in transit." Def.'s Mem., Dkt. #35-1, at 12-15. Failure to allege facts showing that the interception occurred while the communication was in transit defeats a CIPA claim. *See, e.g.*, *Mastel*, 549 F. Supp. 3d at 1136-37; *Adler v. Community.com, Inc.*, No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435, at *3-4 (C.D. Cal. Aug. 2, 2021) (Blumenfeld, J.); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951-54 (N.D. Cal. 2014).

This Court allowed Plaintiff the opportunity to amend because the First Amended Complaint "d[id] not adequately allege that [his] conversations were intercepted in transit." *See* Order Granting Def.'s Mot. to Dismiss First Am. Compl., Dkt. #33, at 15-18. And Plaintiff seems to attempt to cure these deficiencies by

9

---

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

adding a few paragraphs about the third parties allegedly involved. Second Amended Compl., Dkt. 34, ¶¶ 13-20. But ultimately, Plaintiff still fails to adequately allege facts about the *interception* of the alleged communications.

At most, Plaintiff provides only conclusory allegations rather than any facts about Defendant's chat feature that would "support an inference that [Defendant] captured or redirected the contents of [Plaintiff's] communications while in transit." *Rosenow v. Facebook, Inc.*, No. 3:19-cv-01297-WQH-JLB, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (internal marks omitted). Plaintiff pleads generalized facts about how Defendant allows a "Third Party Spyware Company" to "embed code" and then shares that information with Facebook and Meta. S*ee* Second Amended Compl. ¶¶ 14, 20. Plaintiff then provides the bald conclusion that Defendant "allows [a] Third Party Spyware Company to secretly intercept in real time, eavesdrop upon, store, and transmit to Facebook all transcripts of Defendant's chat communications with unsuspecting website visitors," Second Amended Compl. ¶ 14. But stating that the interception occurs "in real time," *id.*, or that the "correspondence is intercepted in transit," *id.* ¶ 20, is insufficient to state a claim under *Iqbal* and *Twombly*, which "requires more than labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see Rodriguez v. Google LLC*, No. 3:20-cv-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [Defendant] is intercepting [Plaintiff's] data in transit."); *In re Vizio, Inc., Consumer Priv. Litig.*,

10

238 F. Supp. 3d 1204, 1228 & n.9 (C.D. Cal. 2017) ("conclusory allegation that [Defendant] intercepted [Plaintiff's] electronic communications 'during transmission'" and "vague allegations about how [Defendant's] data collection occurs 'in real time'" were insufficient to state a claim under CIPA and Wiretap Act). Nor has Plaintiff alleged "how or when any defendant became aware of [her] communications," so as to "support an inference that an 'interception' took place." *Quigley v. Yelp, Inc.*, No. 3:17-cv-03771-RS, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018); *see also Adler*, 2021 WL 4805435, at *4 (dismissing § 631 claim where "there is no plausible allegation that Defendant acted to learn the contents of the messages while they were, in a technical sense, in transit or in the process of being received").

Plaintiff's mention of the third party's role, is the epitome of conclusory pleading. *See Hot Topic*, 2023 WL 2026994, at *10 ("Without alleging a single specific fact in support of the contention that the third party 'harvest[s] data for financial gain,' the [aiding and abetting] allegation is a mere conclusion disregarded under *Twombly* and *Iqbal*."); *see also Iqbal*, 556 U.S. at 679 (finding pleadings are insufficient "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct"); *Quigley*, 2018 WL 7204066, at *4 (dismissing CIPA and federal wiretapping claims despite "vague references" to surveillance because complaint did sufficiently "plead[] an unlawful interception of [her] communications").

As Judge Bernal explains with regard to Plaintiff's previous allegations, "Plaintiff has pled with nowhere near the specificity" required to state a claim, and instead "Plaintiff appears to know nothing about the role that the third-party vendor

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

plays, because [he] does not even know what it is, let alone how it works." *Hot Topic*, 2023 WL 2026994, at *10. Accordingly, "Plaintiff does not allege a single fact that suggests the third-party intercepted and used the data itself." *Id.* (citation and internal marks omitted); *see also Cinmar*, Dkt. #58, at 14-15, 16 (finding plaintiff's "bare allegations" insufficient as to whether any third party used or intercepted data). Instead, "Plaintiff's Counsel has evinced an unmistakable intent to sue as many as companies as possible in the shortest amount of time possible, seemingly without doing the most basic homework on the entities he names as defendants." *Id.* at *10. Thus, Plaintiff does not even begin to state a claim for violation of § 631(a), which would require as a starting place Plaintiff to allege such things as "precisely how that software operates on Defendant's Website," "the ways in which data is shared and used by Defendant and the third-party such that the latter 'intercepts' any communications," and "how specifically the third-party vendor 'intercepts' communications in transit, not just through accessing stored files after a communication has concluded." *Id.* at *13. Plaintiff's Second Amended Complaint continues to provide only conclusory allegations that a third-party "covertly install[s] code" into Defendant's chat feature, Second Am. Compl., Dkt. #34, ¶ 14, but does not explain how it does so. Moreover, Plaintiff provides no explanation as to how the "Third Party Spyware Company" "exploit[s], monetize[es and], use[s] . . . the data it gathers through the chat feature." *Id*. ¶ 19. A third party "that provides a software service that captures its clients' data, hosts it on [its] servers, and allows the clients to analyze their data" acts as a "service provider" to and an "extension" of Defendant, not an eavesdropper in violation of § 631(a). *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021); *see also Williams v. What If*

12

*Holdings, LLC*, No. 3:22-cv-03780-WHA, 2022 WL 17869275, *3 (N.D. Cal. Dec. 22, 2022) ("[T]he question boils down to whether [the alleged third party] was an independent third party hired to eavesdrop on [defendant's] communications, or whether [the alleged third party's] software was merely a tool that [defendant] used to record its own communications with plaintiff."); *Yale v. Clicktale, Inc.*, No. 3:20-cv-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021); *see also* Def.'s Mem., Dkt. #35-1 at 10-12.

This failure to state a claim alleging sufficient facts to show the chat feature constitutes an interception of communications while in transit warrants dismissal, both with respect to claims that Defendant directly violated § 631(a) and claims that Defendant aided or abetted such a violation by a third party. *See Rosenow*, 2020 WL 1984062, at *7 (allegations under the federal Wiretap Act that Defendant "used an algorithm to intercept and scan Plaintiff's incoming chat messages for content during transit before placing them in electronic storage" were conclusory and therefore dismissed).

**II.    Plaintiff fails to state a claim that internet web chats violate § 632.7's prohibition of intercepting or recording telephones conversations.**

Plaintiff fails to state a claim that Defendant violated § 632.7 because § 632.7 only covers communications between two telephones and not, as alleged here, web chats between two computers. The plain text of the statute requires that the communication take place *between two telephones*. *See Hot Topic*, 2023 WL 2026994, at *10 (dismissing identical § 632.7 pleadings, in part, because "[t]he unambiguous meaning of the statute is thus that it only applies to communications involving two telephones"); *Cinmar*, Dkt. #58, at 18-22, 21 ("[S]ection 632.7 only

applies to the five types of calls enumerated [in the statute, and] Plaintiffs do not adequately allege a claim under section 632.7 because their pleadings do not allege they communicated with Defendant using telephone technology."). However, Plaintiff's allegations all pertain to textual web communications via Defendant's website chat feature between two computers.

In *Flanagan v. Flanagan*, the California Supreme Court explained that § 632.7 was intended to "[r]espond[] to the problem of protecting the privacy of parties to calls involving cellular or cordless telephones" as opposed to "landline systems." 41 P.3d 575, 581 (Cal. 2002) (internal marks omitted). Section 632.7 was added to the statutory scheme to "protect[] against intentional, nonconsensual recording of *telephone* conversations regardless of the content of the conversation or the type of *telephone* involved." *Id.* at 581-82 (emphases added). And the California Courts of Appeal have confirmed that "determin[ing] what type of telephone was used to receive the subject call" is an element of a § 632.7 claim. *Hataishi v. First Am. Home Buyers Prot. Corp.*, 168 Cal. Rptr. 3d 262, 274 (Cal. Ct. App. 2014).

Until very recently, no court had applied § 632.7 to web-based text chatting between two computers, and to do so here would be a significant expansion of the violations enumerated in the statute. As Judge Bernal noted in *Hot Topic*, the court's decision in *Byars v. Goodyear Tire and Rubber Co., et al.*, No. 5:22-cv-01358-SSS-KK, 2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) appears to be the first application of § 632.7 to text-based communications on a website. *Hot Topic*, 2023 WL 2026994, at *11-12. Both *Hot Topic* and *Goodyear* involve identical § 632.7 pleadings to this case (except for the named Plaintiff, named Defendant, website,

and alleged third parties). However, the court in *Hot Topic* correctly diverged from *Goodyear* in holding that Byars had not sufficiently alleged that both she and the defendant had used a telephonic device. *Accord Cinmar*, Dkt. #58, at 21.

First, *Goodyear* incorrectly determined that plaintiff had sufficiently alleged her own use of a telephonic device. *See Goodyear*, 2023 WL 1788553, at *5. By its text, § 632.7 only applies to communications sent from a telephone *and* received by a telephone. Plaintiff claims to have (maybe) used a smart phone's computer function to access the web-based chat, Second Am. Compl., Dkt. #34, ¶ 23, but that is not using a "cellar radio telephone" to communicate. Rather, Plaintiff is using a computer to communicate and the fact that the computer can also function as a cellular phone when used in a different way does not mean that the communication is sent from a cellular phone. *Cf. Mastel*, 549 F. Supp. 3d. at 1135-36 (explaining that § 631(a)'s prohibition on tapping a "telephone" does not include computer communications, including such communications by smartphones); *see also Verizon v. FCC*, 740 F.3d 623, 629 (D.C. Cir. 2014) (noting that the internet is no longer connected over telephone lines). For example, if Plaintiff had written a message on a smartphone, printed the message on paper from the smartphone, and then mailed the message, that would not qualify as a communication transmitted from a "cellular radio telephone" for purposes of § 632.7.

And second, the *Goodyear* court incorrectly assumed that plaintiff had alleged *defendant's* use of a telephone. *See Hot Topic*, 2023 WL 2026994 at *11-12; *contra Goodyear*, 2023 WL 1788553, at *5 ("[T]here is no requirement that Byars allege the *type* of telephonic device used by Goodyear") (emphasis added). Plaintiff nowhere alleges that Defendant or a third party *received* Plaintiff's chats on a

15

telephone—a necessary element of a claim under § 632.7(a). Plaintiff only alleges that the chats took place via "telephony," which, even if true (it is not),[1] is a word that is completely absent from the text of § 632.7 and does not meet the elements of the statute. Section 632.7 does not extend to all "telephony" communications, it applies specifically to "communication transmitted between . . . telephones"— namely, the specific types of telephones listed in the statute. *See Montantes v. Inventure Foods*, No. 2:14-cv-01128-MWF-RZ, 2014 WL 3305578, at *4 (C.D. Cal. July 2, 2014) ("According to this list of included types of telephones, the communication must have a cellular radio or cordless telephone on one side, and a cellular radio, cordless, or landline telephone on the other side."). Moreover, the case *Goodyear* relied on, *McCabe v. Six Continents Hotels, Inc.*, No. 12-cv-04818 NC, 2014 WL 465750, at *3 (N.D. Cal. Feb. 3, 2014), stands for a much narrower holding than *Goodyear* claims: that calls using Voice Over Internet Protocol ("VoIP") technology might qualify as "telephonic" under § 632.7. *See Montantes*, 2014 WL 3305578, at *7 (C.D. Cal. July 2, 2014) (finding plausibility "under the specific facts alleged" that defendant had *received* the calls using VoIP technology, which might ultimately be interpreted as included under § 632.7); *Kahn v. Outrigger Enters., Inc.*, No. 2:13-cv-03802-SVW-JC, 2013 WL 12136379, at *6-7 (C.D. Cal. Oct. 29, 2013). Judge Bernal correctly distinguished *McCabe* as involving a technology (VoIP) that is likely telephonic from this case, which involves a technology (webchats) that

---

[1]     Plaintiff's complaint contains no factual allegations supporting that text sent over the Internet necessarily involves "telephony" communication. Plaintiff merely provides a conclusory statement: "By definition, Defendant's chat communications from its Website are transmitted to Website visitors by either cellular telephony or landline telephony." Second Am. Compl., Dkt. #34, ¶ 24.

16

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

almost certainly does not involve messages received on a telephone, landline or cellular. *Hot Topic*, 2023 WL 2026994, at \*11-12.

Indeed, Plaintiff's reading of CIPA would transform almost every adult in California into a criminal and tortfeasor. By Plaintiff's interpretation, every email sitting in an inbox—or even this electronically-filed pleading, which was sent and received over the internet—that an individual retains without the consent of all parties would constitute an unlawful "recording" of a "communication" "transmitted . . . by telephony." So too with every text message sent between two cell phones since, according to Plaintiff, they are sent by "telephony" and unless the recipient immediately deletes them, they remain recorded on the cellphone usually without the explicit consent of the sender. *Cf. In re Google Inc. Gmail Litig.*, No. 5:13-md-02430-LHK, 2013 WL 5423918, at \*23 (N.D. Cal. Sept. 26, 2013) (in rejecting § 632 claim, holding that "the communication was not being recorded because email by its very nature is more similar to internet chats" and, "[u]nlike phone conversations, email services are by their very nature recorded on the computer of at least the recipient"); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications." (citing *People v. Nakai*, 107 Cal. Rptr. 3d 402, 418 (Cal. Ct. App. 2010) (concerning internet chats)). Plaintiff's absurd interpretation of § 632.7(a) has only been accepted by one other court at the pleading stage and should be dismissed by this Court. *See Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004)

("[S]tatutory interpretations which would produce absurd results are to be avoided.").

## <u>CONCLUSION</u>

For these reasons, the Court should grant Defendant's motion to dismiss.


Respectfully submitted,


DATED: May 11, 2023

**LEHOTSKY KELLER COHN LLP**

/s/ *Gabriela Gonzalez-Araiza*
Gabriela Gonzalez-Araiza

*Counsel for Amicus Curiae*
*The National Retail Federation*

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 11, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

<u>/s/ *Gabriela Gonzalez-Araiza*</u>
Gabriela Gonzalez-Araiza

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 11-6.2, I certify that this brief is 5,152 words and complies with the word limit of L.R. 11-6.1.

<u>/s/ *Gabriela Gonzalez-Araiza*</u>
Gabriela Gonzalez-Araiza

19

BRIEF OF *AMICUS CURIAE* THE NATIONAL RETAIL FEDERATION